Case for today is Reyes v. Wilkie, appeal number 18-2423. Mr. Mastriani, did I say that correctly? Yes, you did. Please proceed. Thank you, Your Honor. Good morning, and may it please the Court. On July 26, 1941, President Roosevelt called into the service of the U.S. Armed Forces all of the ground-based military personnel in the Philippines. When he did so, he did so unequivocally and absolutely. By calling them into service, he called not only the human beings into service, but all of their assets and their resources, including the records for those forces. As part of his military order, General MacArthur was appointed as the Commander-in-Chief of the Southwest Pacific Area, and that included the Philippines. At the time, the 7th Military District on the Negros Oriental Island in the Philippines was recognized by General MacArthur. And in fact, the commanders of the forces in that area, both in the Commonwealth Army and in the guerrilla forces, reported directly to General MacArthur until he gave operational authority to General Eichelberger of the 8th Army. So at all times, every single man and woman in the Philippine forces during the time period in question, World War II, were under the direct command of senior U.S. Army officers. Well, how does that bear on your case, Mr. Benjamin? It bears on our case because the, I'll get right to the chase, the Form 23 Affidavit was expressly ordered by General MacArthur and he dictated that it was required to process all guerrillas and personnel in the Philippines, including in Negros Oriental Island, which is the 7th Military District. By doing so, his general headquarters in Australia at the time took that form and they laid out the content and they devised the form, they gave it to 8th Army personnel who were directed to use it in the processing of all the guerrillas in the 7th Military District. They took the information from the applicants, including the appellant herein, Feliciano Reyes, who filled it out. Where are you going? Are you gonna say that the Form 23 is a military document and therefore satisfies 3.203A? It absolutely does, Your Honor. You need to tell us where you're going. Where I'm going, Your Honor, which is set forth in our brief, is that this document was dictated by the U.S. Army, administered by the U.S. Army. Well, you've got one that was signed by a Filipino. And you've got one that was countersigned by a U.S. officer. You had the one that was signed by the summary court officer of the 8th Army, Lieutenant Carol Turk, governs here. It is one of the affidavits that's at issue here. And that's what counts, because this is a service, this is an official document issued by Service Department Number One. Number Two, it shows the length, time, and character of the service. And Three, it is not subject to challenge. Are you attacking the Army's conclusion that there's no proof of her service? Absolutely, without question. But that's not the issue in front of us, is it? It is, Your Honor, because in a sense, it's folded into the issue. Can we rule that the Army was wrong? You can't rule that the Army was wrong in the sense that you're saying, but you can rule what the Army did was with regard to requiring that the appellants may be on the roster of recognized guerrillas. It's unconstitutional, because she was a woman. She was per se excluded from recognition. I mean, we're running around. I mean, the first thing is, if you can show an actual U.S. government document that meets all the requirements that are in it, now your Form 23 doesn't say that your client served under the command. You have to have proof of that, right? Form 23 does say that, Your Honor. It shows that she served in the- What page is it in the record, the Form 23 you're talking about? It's in the appendix at 533 to 536. We've got that volume, we've got 536. But I will say, while you're looking for this, that this is a defense subsidiary to the fact that the appellant meets the crystal clear, unequivocal eligibility criteria of the American Recovery and Reinvestment Act. Or Reinvestment and Recovery Act. Is this a question, I mean, application of law to fact is something that this court does not have jurisdiction to do. It seems to me that this particular question might be an application of law to fact. Tell me why you think I'm wrong. It's not an application of law to fact in the sense that you have constitutional issues before you, so you can look at the facts in the terms of the constitution. So you're just making this argument in the context of your constitutional challenge? In part, yes. But I'm also making the comment or the statement and the argument that the Form 23 meets the eligibility criteria of the act. The act doesn't require that you be recognized or unrecognized. All it requires- It meets the eligibility requirements of the act. That may be true, but that's not the case that you're dealing with. The case that you're dealing with is that the VA secretary has said, based on the Army's refusal to recognize that Form 23 or anything else, that she doesn't qualify. What's wrong with that position? The position- That's the government's position. Well, the position, I agree, it's, we can agree to disagree that Form 23 is an official service document, but we can also agree on- But how do we know that? I mean, you're telling me that General MacArthur conceived of this now in Australia, right? He issued the order from his headquarters in Australia. That's, I think, 192 of our appendix. Well, if you're looking at the face of the document, it's affidavit for the personnel, right? It's filled out by who? It's filled out by Lieutenant Turk. Who is Narcisco Urna, captain? He's a captain in the Philippine Army, and all he did was authenticate the information on here. He authenticated it. But it was verified by Lieutenant Turk. She just said that she, Turk, that Turk filled it out. That's different. Verifying it is different than filling it out. She gave the information for this, which was typed in. She? It's the appellant. That's what I thought. So the appellant prepared this form, right? The appellant gave the- And then it was, the appellant provided the information, and then it was verified by- Lieutenant Turk. Turk actually swears to Turk like a notary, right? Well, he's more of the assembly court officer, but she was interviewed. Who is, you talked to this captain who is authenticating information that was typed in there for and on behalf of your client. Isn't that correct? That's correct, Your Honor, but she was being orally interviewed, and it was being typed in by a U.S. Army personnel. No, no, how do we know that? Forgive me, but I think you're wasting your time and hours in this case. Let's assume, for argument's sake, that the Form 23 is an official government document. So what? So what? What do you want us to do about that? So it meets the terms of the act, the eligibility criteria. Okay, I'll agree to that. So what? So what? Then if you rely on what the government's argument is, that you have to have corroborating evidence for. The government's argument is that if the Army says no, the VA says no. Right. The Army is not before us. Only the VA is before us. But the Army was delegated this task by VA. It's like a principal agent. It has to have, the VA has responsibility. And they concluded your Form 23 was no good. Now, if we conclude it is good, should we order the Army to rethink it? Is that what you're asking us to do? No, Your Honor, I just want to correct one thing you said. The Army never said Form 23 was no good. What they said is we have to confirm it with the claimant's name on the reconstructed roster. And she was a woman who was directly prohibited from being on the roster. So the Army said we're not going to accept the Form 23. Because you're not on the roster. For whatever reason. For whatever reason. Say we like the Form 23, but it won't work because you're not on the roster. Just to come back to the 23, tell me where in does the 23 show that this person served under a commander, appointed, designated, et cetera? The eligibility requires that the eligible person be one who served under commanders, appointed, designated, et cetera, by under the authority. If you go to five. Where does the Form 23 speak to the question of your person having served under such a commander? Under Appendix 534. I want 534, okay. And it lists all of her service. Yeah, well, how do I know? How do I know that Garcia served under a command? Because we gave you information in the brief to show. But that's not in the Form 23. You keep saying the Form 23 on its face proves all this. It does, Your Honor, because Captain Garcia reported. No, no, the Form 23 talks about Captain Garcia. He could have been totally disconnected from any U.S. command. Your Honor, I beg to differ with that kind of an argument because if Lieutenant Carol Turk verified this and. All he did was verify that what in here is being said correctly. It's like a notary public. No, it's more than that, Your Honor. How do we know? He was checking the accuracy of what this woman was. Well, the accuracy was that she served under Garcia. The accuracy that she served under Garcia, right? Yes. But where's the connection between Garcia and someone who served under a command that was under the statute? Well, first of all. You then cite me some other document that is not incorporated by reference in the 23. Your Honor, all the evidence is that everybody in the 7th Military District were recognized because they were commanders who were under the direct command of General MacArthur and then General Eichelberger. So everybody on the island that was involved. So where do you go if, say, we reject your argument that Form 23 alone satisfies the eligibility requirements? Then you get deep into the waters of a violation of the appellant's constitutional rights because the only other piece of information that's being relied upon in contravention of the act is the roster. And so what's the problem with being deep in those waters? It's a violation of her constitutional rights. Don't, aren't you arguing that you on remand are entitled to have those constitutional arguments adjudicated? You can do that here, Your Honor. But more importantly, you can find that she meets the eligibility requirements of the act. I mean, when you look at the eligibility requirements. I need to ask you a question. Okay, sure. Which is, one of the arguments that you make in your brief is that 38 CFR 3.203 doesn't even apply here. And that instead, what the VA should have done was look at the eligibility requirements of 1002D. So tell me, why is that? Why is it that the regulation should be displaced in this circumstance where it is the VA's usual practice when they're looking at whether someone's served to rely on the process they have in their regulation? Because 3.203 is the normal protocol for determining eligibility as to service. Right, why doesn't it apply here? What language can I rely on in the statute to follow you and say that, oh, you're right, 3.203 doesn't apply here? D, you could look at D. And you could look at D. D doesn't, does not give you any exception. You're talking, what do you prove? What are you referring to now? This is, you're finally getting to where your argument should have gone from the beginning. What is it you're looking at in this statute? And I'm referring now to section 1002 of 38 U.S. Code. What is it in that statute that says the VA's section 3.203 is not the way to determine eligibility? Is there anything in the statute that says that? The statute in section D defines eligible persons. Which is different from 3.203. And the only reference to title 38. So look at D, and what do you, if you show up at the R.O. wanting the benefit of that statute, what do you have to prove to the R.O.? You have to prove that you serve the military forces that were under the commander's appointed, designated, or subsequently recognized by the commander-in-chief of Southwest. And you think you can prove that? Yes. And who should be the deciding authority for that question? The VA, because the VA had that document. Not the Army. That's correct, it never should have given it to the Army. Because it had the document with that, all that information in there. But the VA has a rule called 3.203 under which they send everything to the Army. Why isn't that a perfectly appropriate rule? Because it contravened the intent and purpose and the letter and spirit of the act. They didn't need to do that. And, and. Somebody has to make the decision that the individual served under the requisite command. Right? That's right. Somebody has to make that decision. But it's noteworthy here, Your Honor. And, and, and in, in, there is nothing in the state, and that question cries out from Section D of 1002. Because I just asked you, what do you have to prove? You have to prove service under the command. So the question is, well, how do you prove it? That's a gap. That's a question that wasn't answered in the statute. So there's nothing in the statute that requires, and I'm going to ask the government the same question. Is there anything in the statute that requires that the VA use 3.203 in determining her eligibility? The statute requires that it use D, an only D. That's, that's the problem here is that. What about the fact that D refers to served? It says served, and then why can't the agency turn to 3.203 to determine what it means by served or service? Because it has Form 23. And notably, the VA and the government have not disputed. Who has Form 23? VA does. The VA has Form 23, which they do not dispute with regard to authenticity and accuracy. There's been no argument whatsoever that they don't believe it's, it's, it's genuine, and that they don't believe it's accurate. And if you. Well, we'll ask the government whether they believe  Can I ask you one more question? Of course you are. 1002I, it talks about recognition of service. It says the service of a person as described in subsection D is hereby recognized as active military service in the armed forces for the purpose of, and to the extent provided in this section. What do you think this means? That means. Well, like, I didn't see you argue it in your brief, and I would have thought you would have. Well, it's subsumed. We did refer to that in the brief as well as Jay, but it's subsumed within D. It's, D is absolute, it's unequivocal, it's all inclusive. Nobody's excluded. But what does I mean? What's the purpose? What does I mean? Why is it there? The purpose of I is that everybody who is served is deemed to be recognized as having served in the armed forces, the armed forces being the armed forces of the FARC. Recognized as active, the active is the word that leaps out at you, which is, what? Which means active means at the time that they were actively in the service. Right, but you're still not answering, maybe the government will have us a better answer as to what purpose, what service does I do under the statute? I would have thought you might have answered that by saying that the armed forces being referred to there is the armed forces of the United States, which is referred to as D1A. And that the point of that is, even if you were not actually in the armed forces of the United States, but you were in an organized military force of the government of the Commonwealth of Philippines, for the purposes of this statute, you will be assumed to be an active member of the United States Armed Forces. I would have thought that would be your answer. I did say that this was the armed forces for the Far East, which included the armed forces of the United States. The armed forces, what's it get you? It gets you the fact that she was a member, the armed forces of the Far East were the armed forces of the United States. You know that if a veteran of a guerrilla service had signed up for Section 107 benefits, after 1946, they were deemed to be not in active service. Well, the Rescission Acts, that's what the whole purpose of this act was, was to undo the injustice of the two Rescission Acts in 1946. I mean, that's exactly what the purpose of this was. And that's why Senator Inouye made the statements he did about how horribly treated Filipino veterans were. And that this was an attempt- So the ad hoc was to provide an additional benefit to Section 107 veterans? No, this was to, these were damages for human suffering per the act. Your view is that this language in 1002D goes beyond the original Section 107 language. Is that correct? Do I understand that correctly? Yes, Your Honor, this stands on its own. Even though it's the exact same language. Well, it stands on its own, though. They're using it, but it stands on its own because they're taking these people who were disenfranchised and they're restoring some benefits to them in the form of the Equity Compensation Fund. I mean, Senator Inouye, let me just read to you what he said. I think it's, because it was a very short legislative history- The trouble I have with it, you can read it, but the trouble I have with it, it's just one senator. And like, for me, I need to look at the language of the statute itself as opposed to what one senator said about it. Well, he was, he was a sponsor. He said, I'll just say that he said, that these Filipino men served us well. They died for us, they got wounded for us, and they deserve recognition. And that's what the act is trying to do, is to give them recognition. I understand the problem I'm having, and I want you to help me, I do. I understand that. The problem I'm having is that the Section 107 language is the same as the Section 1002D language. So how is it that you distinguish the two? I mean, obviously, Section 107 is talking about people who are on the roster. How is it that Section 1002D would include somebody who wasn't on the roster? Because one, because Section D is unequivocal and all-inclusive. It doesn't talk about the roster. The act doesn't talk about the roster. Well, 107 doesn't talk about the roster, either. Understood, but the fact of the matter is that we all know- They've had the same problem with 107 as they have with this. That they had to be able, they have a definition, they have to be able to find some way to tell you whether a particular individual served under the right command. And if you did, then you're home free. And under 107, they chose to say, we're gonna have your Form 23 serve to show where you served, under whom you served, and the rest, but we can't be exactly certain you were in that command, you were serving in that command. And so they went out and interviewed people and whatnot, right? And that's how they build up the roster. Well, the roster, don't forget, all the rosters were destroyed or lost, and when they were put together, they were limited. They were screened down to a certain number. They rebuilt the roster, and then 48, they shut it down. Nobody else can get on the roster, right? Right, but the roster, I mean- The 107 benefits are locked down, right? And no woman could ever get on the roster at any time. Well, I understand, that's a different issue. That's a different issue. Unless she was a nurse. A registered nurse, by the way, yes. So what happens is that Congress comes along with this statute, and I think you're saying, for the same, exact same group of people that they created 107 for, they wanted to have an additional benefit. It's not an additional benefit. This is a benefit to go to everybody who was foreclosed from benefits. That's the whole purpose of this act. It's not augmenting something. It's not in addition to, and contrary to the government's argument, which we have only- If you get 107 benefits, you couldn't get this? You could still get this. This is for anybody who applies. There's nobody excluded from this. Nowhere in here does it say, and by the way, when we said everybody, we meant just these people and not these people. Anybody who applies, who meets the criteria, qualifies and deserves and is entitled to an award. And I will just say, the argument with regard that government made in its opposition brief to this court was for the first time, raise this issue about the two benefits classes and only one is eligible and so on and so forth. So in addition to waiver, you've got that issue. But I think if you look at D and then you look at I in conjunction with D and I just confirms what D says, and it also follows the legislative history, it's absolutely crystal clear that 3.203 does not apply and the Army determination is not necessary and is not needed because it's also faulty and the VA should have found that the form 23 qualified the appellant for this benefit. Mr. Mastriani, I think we're gonna hear from the government now and we will restore your rebuttal time. Thank you very much. Good morning, your honors. May it please the court. Do we refer to you as Ms. Moses or Ms. Jana Moses? Ms. Moses. Ms. Moses? Yes, sir. I couldn't get Mr. Mastriani to play with me on this one, but maybe you will. It seems to me that his problem, his client's problem, is to somehow get the secretary of the VA to decide her eligibility under D, 2D, independently of the Army's usual way of doing business. The Army's usual way of doing business is to look in their files and their records, including that famous document with all the names on it. That's part of the Army's work, isn't that correct? Yes, your honor. The VA doesn't have a, what is the name of that thing again? It's called the? The affidavit? Is that what you're? No, the list. Oh, the roster. The roster. The roster is not part of the VA's database. It's part of the Army's database, right? Correct, your honor. The VA says to the Army, you look in your databases and tell us whether she is qualified for benefits. The Army says, no, she's not on our roster and we don't know who she is. Whatever the Army said, it added up to a no. The VA then says, sorry, do I have your case right? If the VA says no, I mean, if the Army says no, the VA says no, because that's what 3.203 does. Is that correct? Largely, your honor, I just want to correct one thing. What VA does with respect to seeking verification of military service from the Army is just seeking verification. It's not asking the Army whether the claimant is eligible for whatever benefits it's claiming. It's the who. I'm sorry, your honor. When someone shows up at the RO and says, I want some benefits, somebody has to make a determination that you were connected to the service. Yes, your honor. And the VA doesn't have any way to do that because the VA doesn't know whether I served or didn't serve. Now I could tell them I did, but they don't have any way to verify it, right? Right. So they go to the Army for verification. Of service, yes. And typically in a case of a U.S. citizen who's been serving in the Army and got hurt in Vietnam or something, they'll look and they'll find that the person was discharged and the discharge record shows the dates of service and whatnot and that deals with the whole problem, right? Right. And so in this case, with the people who'd served in the Philippines since they hadn't actually served in the U.S. military, they don't have a U.S. discharge. So somebody had to figure out how are we gonna deal with these people that Congress created a right for before 46, they were coming in anyhow, right? Yes. And so the secretary says, oh my goodness, how am I gonna do this, verify? I don't know. Who has the records? VA doesn't. So they make 3.03 and they say, we'll go over to the military and ask them if they have the records, right? Yes, Your Honor. Seems fairly reasonable as a matter of proving what I call the who, right? Yes, Your Honor. So Mr. Mastriani's problem then is to say, either to go back to the Army and say, oh, you're mistaken, but that's not why we're here. We're here because he's arguing the VA, I think he's arguing, although it was hard to find out from him. I think he's arguing that this is not a case in which the secretary should have gone to the Army for verification. Why? Because 3.203 doesn't apply to this statute. Shouldn't that be his case? Well, I'm not sure if it should be his case. That's what he's saying. To the extent that his argument is that 3.203 doesn't apply, the statutory language specifically says that the secretary shall administer the fund consistent with its existing regulations and also shall apply the definitions in section 101. So I think we have his argument is that- The application for the claim shall contain such information and evidence as the secretary may require. Yes, Your Honor, paragraph C. That's what the statute says. Yes. Is there anything in that statute that refers to the VA's section 3.203 as the appropriate criteria? So- It's a yes or a no. No, there's nothing that specifically refers to that, but other- Okay, so there's nothing specifically in the statute that makes the VA look at the Army's records, right? Well, paragraph J does say that the secretary has to administer this fund in accordance with its existing regulations, which are, it's paragraph J2, Your Honor. The secretary shall administer the provisions of the section in a manner consistent with the applicable provisions of Title 38, United States Code, and other provisions of law and shall apply the definitions in section 101. And in connection with previous benefits that were being sought out of the Philippine thing, the applicable provision was 3.203. Yes, Your Honor, and Congress was aware- Moving the hoop. Of the historical practices of the Army in terms of how it's verified service. It was also- So it's just so we get it clear, because the argument's going all over the place, partly because of my fault, interrupting, and we're obviously interested in this case in case you haven't figured that out. I think Ms. Rays is making an argument that I don't- She says, I don't think 3.203 ought to apply at all, for whatever reason, shouldn't apply at all. But she says, if it does apply, I think it's been, as applied, it's unconstitutional. Right? Yes. And as to that argument, as it's unconstitutional, the CAVC said, well, that's beyond our jurisdiction. We can't reach that. And that has to do on whether or not there's an exhaustion of remedies, et cetera, as you know, the Maggott case, Ledford and then Maggott. And so it seemed pretty clear to me that the notion that they couldn't greet the constitutional argument because it hadn't been raised before the board, that's not jurisdictional. So that argument, we can come to it later still alive. So what does 1002I, recognition of service, is in the statute? And what they're saying as to the service for these people for this statute is deemed to be active service. As we know, section 107, adopted in 46, on purpose said, it's not active service. So what is I telling us? What does it do in this statute? Section or paragraph I is allowing for additional benefits for the one, section 107A group, a group that already... Wait, wait, wait, I is simply called recognition of service. Yes. The service as described in D, which is also the service under 107, right? Exactly the same definition, is hereby recognized as active service. Now, what's that get you? What do you take to the bank after you've been told, Mrs. Ray's told that her service was active, assuming that she's satisfied? With all due respect, your honor, let's read the whole sentence. Recognized as active military service in the armed forces. What armed forces are we talking about, counsel? My understanding is the armed services of the United States. Armed forces of the United States. I'm sorry, armed forces, yes. It's the only armed forces referred to in the statute. I think you're quite right. It's the armed forces of the United States. So what that section does is make someone who qualifies under D, an eligible person under D, a member of the United States Armed Forces for whatever purposes. But notice it says to the extent provided in this section. Yes, your honor. That's a puzzle. Can you tell us what's it do? Well, for the purposes. What's it get you? It gets you payment from the Philippine Veterans Fund for the purpose of this section, which only pertains to the Philippine Veterans Fund. It gets someone. You wouldn't have gotten paid without it if you took this out? Please, if you took this out, you wouldn't get paid? Of course you would. What it's saying is if you are a subsection D person, if you can prove that you served under the right command, right, in the Philippines Guerrilla, then you're recognized as active service, but just for purposes as provided for in this section. So it's obviously doing something in the section. One argument is that it's supplanting 3.203. How so, your honor? Well, why are you recognizing them as active service? Well, there may be other benefits to which the veteran, if they're considered active duty, may be entitled to. No, but it's only. But what you just said, this is only giving them the right to the $15,000 in the fund. I mean, if we're assuming that, if it's not just limited to the. It's, read the words. It is designating you as active service in the Armed Forces of the United States for purposes of this section, not for any other purpose. And this section is providing this award, right? And it's only to that extent. I think I understand, your honor. And this may be a reasonable explanation. I think it's limiting the claimant to the payment instead of, whereas when, let's say someone served in the US military, they were discharged, they have a DD-214, they would be entitled to all of the benefits that other veterans would be entitled to. And what this paragraph is saying, they are recognized as active military service for the purpose of this section, for the purpose only of administering this fund. Why are they treated differently than the 107 claimants who are on purpose deemed to be not active? My understanding is that 107 claimants are entitled to some. Yeah, but you read the definition of a 107 claimant, they are told that they are people who did not have active service, did not have active service. And so obviously there's a reason to distinguish the folks under this 102 statute from the 107 people, because these folks are being told that they, if they satisfy the definition, they are active. But only for the purpose of this, for the payment of this fund. So it has to give them something. It's giving them something additional. Yes, your honor. That they wouldn't otherwise have for getting the money under this statute. So I'm saying to myself, why doesn't that mean that you don't need 3.203? That's supplanting. Because the VA is still responsible for confirming the military service, or verifying the military service of the claimant. Can I ask you something? I'm gonna just divert for a second, because you said something earlier, where you said under 3.203, that even though the NPRC might verify or not verify someone's service, that still isn't determining whether somebody's eligible or not. That the VA, I thought you were trying to say something like the VA will do some sort of other determination. I'd like to know what that is. Well, typically when a claimant files a claim, the verification of their military service is one of a few factors that need to be satisfied. We're just looking at the eligibility determination. Just to be clear, I don't wanna talk about the VA's general procedure. I really specifically wanna ask what you're referring to with respect to the particular statute at issue here, and what procedure do they undertake? In addition to going to the NPRC under 3.203. I understand, Your Honor. I will clarify. So for the purposes of the Philippine Veterans Fund, essentially VA is verifying with the service department. Does this person have qualifying military service? Yes or no. And the Army, I'm sorry, VA is bound by what the service department's determination. So that is in effect, it's an eligibility. So that is, yes. In this type of case, yes. That's what you said in your brief was that the VA treats itself as bound by the Army's determination. And this court's precedent in SORIA said that the, I'm sorry, the Army's or whatever military service department's determination with respect to service is conclusive in binding on VA. We have a non-precedential opinion that says that. That's not binding on anything. SORIA, are you referring to maybe GO, Your Honor? But SORIA is, I believe, is a published decision. Yes, it is. But SORIA was not based on the 1002D section at issue here, correct? It did not address section D, no, Your Honor. So it's not precedent for this issue. With respect to whether the military service department's determinations are binding on VA, yes. That's quite clear. Well, that assumes that the, nothing in this statute permits the VA to escape from its own booby trap. Right, but again, then there would really be no need. Well, if the Veterans Administration determined that the determination made by the military violated constitutional rights, the secretary would have some authority to do that. I'm sorry, Your Honor? Well, let's walk the case through the constitutional arguments. Let's say, for example, we point out that the CABC was wrong when it said it was jurisdictionally stopped from reading the constitutional arguments. That's a no-brainer. They were not jurisdictionally stopped. And so we apply the tests in MAGIT, and we reach the, as independently, which we're allowed to do, and we reach the conclusion that the VA should have listened to and adjudicated the constitutional questions here. And the constitutional question is that 3.203 is unconstitutional and is applied if you use it to borrow the benefit. Because of the gender discrimination. And so we send this case back, and it gets adjudicated. And if the CABC reaches the conclusion that there was a violation of the Constitution, there's going to be some remedy, right? And there's nothing stops the CABC from hypothetically deciding the constitutional issue in favor of race, right? Well, the Veterans Court was correct in determining that there is really no legitimate constitutional challenge to the Secretary's policy or rules. All of the arguments that Ms. Reyes has raised in her brief relate specifically to the Army's policy and the way to fix whatever imperfections there may be with this officer. Our question was, what if the VA knows that there's some constitutional challenge? They know there's a constitutional impropriety with the procedure that's undertaken in 3.203. Doesn't the Secretary have some responsibility for using constitutional criteria in making his decisions? With respect to VA claims? The VA Secretary, if he uses X as the criteria for making a decision, and it turns out that X is unconstitutional, doesn't that vitiate the Secretary's decision? No, because the Secretary is following, it's again, longstanding precedent that it shall verify service with the Service Department. What happens hypothetically, just hypothetically, if it comes to the attention of the Secretary that the Service Department on purpose is say refusing to grant a discharge certificate to black veterans? All of a sudden, the RRO wakes up and says, oh my God, we don't have any African-Americans in here anymore, I wonder why not? I understand your argument. And the answer is, well, guess what? Folks over in the Defense Department decided those folks, we're just gonna snuff them. The Secretary's gonna go ballistic. He's gonna say, you can't do that. When the Secretary gave to the Defense Department authority to do something, delegated authority, and you would think whoever's delegating authority has the power to make certain that the delegate behaves properly, right? And that's all he's talking about here, is to say he thinks that when the military turned him down, they did it, when they disrejected the evidence he gave for a reason that said he couldn't qualify for X and it was unconstitutional to put that requirement, and that's what he's arguing. I understand. But that constitutional challenge to the discriminatory practices of the Army can be brought to the district court? He can bring a discrimination claim. But that's what you're saying, and also, people raise constitutional challenges at the BVA all the time. And the BVA usually says, well, we don't have the authority to do that. We don't know what we're doing. And then the case comes up to the CAVC, and they raise the constitutional question, and sometimes the CAVC says, well, that's true. You had a duty to exhaust at the BVA even though they were hopeless and couldn't do anything. Now we'll take your argument. CAVC hears constitutional arguments all the time, right? It does, and it didn't say to me. And so why not here? It didn't. When they're saying, dear Mr. Secretary, it will come as a great shock to you to know that the military in exercising your delegated authority is violating the Constitution. Don't you want to know about that, Secretary? Well, this court in Talon has already looked at whether certain benefits that are administered to Philippine national folks, individuals, or a Philippine national origin are allowed to be considered active duty, whether they're... Well, this isn't a national origin or constitutional challenge. Can I ask a different question if you're, did you get the answer you wanted? Well, I think what we're trying to do is to figure out whether there's any remandable or reversible error in this case. Well, it seems, I wasn't clear about that dialogue, but it seems self-evident that if the VA secretary makes a decision based on unconstitutional criteria, the decision is unconstitutional. But let me ask you a slightly different question. You put a lot of reliance on J-2, the secretary shall administer the provisions, right? You pointed that out to us a couple of times. But let me just remind you of the last phrase in J-2, except to the extent otherwise provided in this section. Let's assume we were to decide that this section provides a direct responsibility on the part of the VA secretary to decide these cases on the best evidence available, which does not use 3.203 exclusively. He may go to 3.203 and ask the Army for their information, but let's assume we construe the statute as saying, Mr. Secretary, look at all the evidence in these cases, treat the Army's view as only one item of evidence. Is that a possibility? Well, Your Honor, that would contravene section C. Negative the goal and that other case, which had nothing to do with the statute, so I'm not impressed with that case. That would negative the obligation that he's bound, wouldn't it? We can unbind him in that way, hmm? Well, but the statute also says that the application shall contain what evidence that the secretary requires. And in this case, the secretary is saying we require verification from the military service department. And the military service department has rendered a negative determination even after, not just- I have a question for you. It says the application for the claim shall contain. That's the application made by the applicant. How is the applicant, is the process that the applicant has to first get the certification and then go to you? I thought that's not how the process worked. The, I mean, I'm not exactly sure all the components that go into the application itself, but what happened in this case was that once you, I believe once Ms. Reyes applied, sometime during various times, I believe it was at least three times when the VA submitted evidence that Ms. Reyes herself provided, saying this is my evidence that I served and this is qualifying military service. They provided all of that to the Army and to the NPRC, both of which returned a negative determination. What I'm confused about is you're relying on, and I'm sorry to hijack your line of questions. I'll go back to you. It says the application for the claim shall contain such information and evidence as the secretary may require, but you're referring to some evidence that isn't even something that the claimant can submit. How can that provide the answer to Judge Plager's question? Well, the applicant can provide evidence of the dates that they served or the unit under which they served. There is some evidence that they could provide in support of the claim. Did the secretary accept, I thought you all said, we're not gonna accept any of that. The CAVC said, we're not gonna accept any of that other evidence, only the Army's evidence. Isn't that what the CAVC has said? The evidence- That was your position. The evidence is used to help search the records to determine whether the person has qualifying services. So it's helpful to- But the VA secretary never saw that evidence. The VA secretary never personally saw the AGO Form 23, did he? Yes, and in the- He did? Yes, Your Honor. In the statement of the case at Appendix Page 434, the VA discusses the affidavit and discusses some of the other evidence that was submitted and concluded that it did not qualify for, I'm sorry, it did not meet the eligibility criteria for qualifying military service. Yeah, but that was because the Army said, no, that's your position in your brief. Your position in your brief is unquestioned and absolutely clear. The VA can't give something that the Army said no to, right? Yes. That is your position. Yes. So even if, and the fact it says the VA saw this, that doesn't tell me whether the secretary made the decision with all of that evidence in front of him. I'd like to know what the VA secretary actually decided. What he actually decided according to your brief is that an Army said no, and that was the end of the case because he's bound by the Army's no. Yes, as it relates to qualifying military service. As it relates to eligibility. That is the VA's, the government's position. The government position is that the service department- If the Army didn't like the Form 23, the VA didn't like it either. Is that fair? I don't want to be unfair to you, Ms. Moses. Is that fair to say if the Army didn't like the Form 23, the VA didn't like it either? If the Army concluded that in looking at the form that it did not certify military service, in addition to all of the other evidence, and the ultimate answer was no, this person does not have qualifying military service, the VA relied on the Army's decision in that regard. That was what the secretary meant when he said, the application for the claim shall contain such information and evidence as the secretary may require. And the answer is, what does the Army think? What does the Army have to say about verifying your service? Yes. Okay. But in particular, in this case, the fly in the ointment was not the Form 23. It was the absence of presence on the roster. Isn't that correct? We don't have any reason to believe that the folks over on the military side took issue with what's in the affidavit. There was, there's nothing in the record that shows that they- Like I said, there's a two-part test. You've got to, if you provide the affidavit and you're on the roster, then we're going to say yes. Right? The affidavit provides information to help the Army determine- Well, I understand that, but I mean, it was a two-part test at the body that the records were sent to, because there hadn't been a discharge document. And the test they were using was, do you have a 23 and are you on the roster? Or it could be any other information also, but in this case, it was Form 23 and some other documents as well. But isn't the key, like these documents that are provided, then give the information that's helpful to determine whether or not somebody's on the roster? I mean, it seems as if really it's coming down to whether somebody's on the roster or not. Is that correct? Yes, Your Honor, that is correct. Are you aware of any cases in which the agency or the board has allowed Filipino civilian guerrillas during World War II to obtain this one-time benefit, notwithstanding the fact that they're not on the roster? I am not aware of a case in which the Army has verified service. I thought there was maybe one. They're not on the list. It's Pablo, Enrique Pablo. It's a Board of Veterans' Appeals case, docket number 10-27727. Not exactly sure from this opinion exactly what records were submitted to the board in this case. But in this case, I believe that the claimant was not on the reconstructed roster, but was able to provide enough information where the board actually looked beyond the roster. Your Honor, I'm not familiar with that case. It wasn't discussed in our briefing. We can offer supplemental briefing on that point. I'm just not familiar with it. I just was curious as to whether there was different treatment of different people. As far as we know, no, that the VA relies upon the military service department's determination in determining whether the person has qualifying military service, especially for these cases, because as Your Honors have pointed out, they don't have the typical documentation that most claimants would have, like a DD-214. Do any of these cases ever settle? Do you have any of them ever? Well, I'm not certain if the government really wants to spend a lot of taxpayers' money on a constitutional adjudication. I don't know whether there are circumstances in some cases where the government might say, well, we'll throw the cards in, we'll settle. I just don't know whether in the context of this fund, because people have this case that the presiding judge cited to you is in the legislative history in one of those set of hearings as an appendix. And it's a circumstance in which a single veterans judge at the BVA allowed a Filipino to get access to the fund without being able to show that they were on the roster. I just wondered whether there's any wiggle room here. I guess you probably don't know the answer to that. In this particular case, we have discussed settlement with Ms. Reyes' counsel, but we have not reached an agreement, Your Honor, on that. But we have had discussion. Ms. Reyes' counsel has made it clear to us that the time is, can you say it of the essence here, because of the advanced age of the claimant. And nobody really wants to go through a protracted remand that ties up a lot of resources for a long period of time. Put it another way, if we should decide, and hypothetically you understand, if we should decide to vacate and remand this back to you all, to the VA, to handle it correctly, can we get some assurance that Ms. Reyes will not, she's 91 at the moment, will not have to make it to 100 in order for her to get her $15,000? Well, Your Honor, I certainly can't make any promises about the adjudicatory process if the court decides that it should be remanded. But I'm sure that VA will do everything to be diligent about getting any sort of, any claim processed. It would not be unreasonable, should we remand, for us to provide that this shall be expedited in view of her age, would it? That would not be unreasonable. I don't think that would be unreasonable, though of course our position is that this should not be remanded. It might not produce very much, but it would make us feel better, I suppose. I understand, Your Honor. Well, if the court doesn't have any further questions, we ask that you affirm the Veterans Court's decision. Thank you. Thank you. Mr. Mastriani, you have three minutes. Thank you. Your Honor. Mr. Mastriani, just one quick comment from me. I'm sorry if I was a little rough with you earlier, but I really wanted to get to this part of the discussion, which I think is where your case turns. Yeah, thank you, Your Honor. I've been before you in the past, and I appreciate you riding me. It's always productive, let's put it like that, and helpful. Thank you. You're welcome, Your Honor. The In re Pablo case that you referred to is a BVA decision. It doesn't have any precedent, but it was discussed in the 2014 congressional hearings, and that's where, in direct questioning from one of the congressmen to the VA official, he asked, would it be reasonable to accept the Form 23 as proof under the Reinvestment Act, and the VA official answered yes. That's in our brief, by the way. Now, just a couple of comments. Just keep in mind that during this entire period of the war, the Philippines was a part of the United States. It was a territory of the United States, so I don't think that should be forgotten, but as far as this language, Judge Cleaver, you were talking about the Section D, the 1002D language coming from Section 107, and it actually did not come from Section 107. It came from the Philippine President Osmeña's order in 1944, which is at Appendix 172, discussed at page three of our brief. Right, and then it found its way into 107, then found its way here. That's right, Your Honor. But I think importantly here, on this remand issue, we absolutely appreciate your concerns about the exigencies here, and that should be expedited, but we're remanded, but given the constitutional issues, and in our mind, the clear and unequivocal constitutional violations, you have the authority and the power to reverse, and if you reverse- Well, no, first we would have to adjudicate the claim, and the way in which the regulation is being applied doesn't show flat-out discrimination against women because nurses are included, right? Registered nurses. Yeah, so you have a form of a gender discrimination. You say, well, that, and the status that your client is in, presumably a male in that status, might have qualified. They did qualify unequivocally. Well, but we don't, you're saying that, sir, but this is a court of appeals, not a court of fact. For example, all of your chain-of-command evidence and that brilliant brief of history has brought all this forward to us. That would have to be tested in a court of law to make certain that was all there. I can't make those judgments. I can't take judicial notice of all those things. Well, I think, we think you can, Your Honor, and the thing is that those records were either, for the most part- I can't, you haven't shown me any proof that a male orderly, or whatever the title was that your client had in the hospital, that a male received benefits. You just said it, he did a minute ago. Because all men were recognized. No, women were- You haven't given me a name, rank, serial number, and a date of the payment. No, I understand, I do understand that. And that's a fact. We, you can't, you can't win your constitutional argument without that fact. But, Your Honor, you kind of, we're getting the burden put on us where under Kaplan versus Peek and other cases, the duty is on the VA and the government to do its utmost to assist Mrs. Reyes to have gotten, to have gotten and gathered all of these records that it had constructively before, and the 1949 report was before the VA. It was responsible for bringing that, identifying that in the interagency task force that the White House ordered, and digitizing it and releasing it to the public. So they had expressed knowledge of the unconstitutional treatment of all women in service except for registered nurses. So it's, this is not a mystery here. They have all those records constructively before them because they delegated to Army the right to do that. And this argument that Mrs. Reyes could have gone to the Army Board for Correctional Military Records is completely bogus because there was an announcement of a rule right after the war that Filipinos could not go to the board. They were prohibited from going to the board to get correction. So this is like a serpent eating its tail. Your catch-22 arguments are pretty good. There's no question about that. I mean, I'm being told, well, you can get this award if you can get on the roster, and the roster was closed in 48. So how are you supposed to get on a roster when it's closed? Right, I understand that, but as you point out, Mrs. Reyes is 91 years old. Every day people are dying that were veterans, and they're gonna be foreclosed if this, even if you have a remand that lasts 60 days, we're gonna lose dozens and dozens of people. And about 10,000 people have been denied benefits, and a good part of them is because they weren't on the roster. You, as the officer on the court, appreciate the fact that we don't have a bank account. We can't write checks. The office of this particular institution is not to hand the 10,000 bucks to you. No, understood. It's to hand you the entitlement if you're entitled to it. Right, you're right, and all that money is sitting, it's already been appropriate. It's been sitting in the treasury in an account since 2009, so it's not like it has to be appropriated by another act of Congress or somebody authorizing it. It's just sitting there doing nothing, and meanwhile, all these little kids are suffering. You think it's sitting there. In fact, there's nothing in there. Well, you're probably right. Thank you, Your Honor. Thank you, the case is submitted. Mr. Phillips, could I see you back at the roving room for just a minute?